UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RAYMOND DELANO PITTS,

    Plaintiff,

v.                                          Case No. 2:17-cv-12
                                             HON. JANET T. NEFF

STEVEN BUDA, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Raymond Delano Pitts pursuant to 42 U.S.C. § 1983. Plaintiff is currently confined in the Cooper Street Correctional Facility in Jackson, Michigan. Plaintiff asserts that his rights were violated by Defendants while he was confined at the Ojibway Correctional Facility (OCF) in Marenisco Township, Michigan. The remaining Defendants Steven Buda, Steven Lehto, Jeffrey Stachowicz, and Andrew Mettler filed a motion for summary judgment (ECF No. 31) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (ECF No. 34).

On March 8, 2017, the Honorable Janet T. Neff, United States District Judge, issued an opinion in this case explaining in part:

> In Plaintiff's complaint, he alleges that on March 12, 2015, while he was incarcerated at OCF, he became involved in a fight with another prisoner. Upon the arrival of defendants Buda, Stachowicz, Matter, and Lehto, Plaintiff stopped fighting and put his hands in the air to show his surrender. Plaintiff was ordered to lie on the ground and Defendant Buda placed his knee in the center of Plaintiff's back. Plaintiff offered his left arm to be cuffed while telling Defendant

Buda that he had a plate in his wrist from a previous injury and his left arm did not bend. While cuffing Plaintiff, Defendant Buda squeezed and twisted Plaintiff's wrist and forearm and struck the back of Plaintiff's wrist, breaking Plaintiff's forearm. Defendant Buda then exclaimed that Plaintiff's arm bent now. Plaintiff told Defendant Buda that he thought his arm was broken. Defendant Buda responded that maybe Plaintiff would think about that before deciding to fight again.

Defendants Lehto, Stachowicz, Stafford, and Matter were members of the yard crew and it was their duty to provide security in the yard. Defendant Matter did not intervene to prevent Plaintiff from being harmed by Defendant Buda. After the incident, Defendant Matter and another officer took Plaintiff to health care, where Plaintiff was seen by RN Jean Riverside, who determined that Plaintiff's left wrist was broken. Before Plaintiff was placed in a transport van, Defendant Yon told Plaintiff:

> I had to leave my Bar-B-Que because of this shit. You better be glad that it wasn't one of my officers that got hurt. If that was the case they'd be taking the "long" way to the hospital and you might not have made it back! Be careful what you say to the state police, remember you have to live here and we can make it real hard on you, real hard. Tell them what you want to, but remember, this is the U.P. and we run this shit up here.

*See* ECF No. 1, PageID.8.

Plaintiff was taken to the hospital by Defendants Stafford and Stachowicz. After Plaintiff was treated, he was returned to OCF, and was then sent to level five security at the Baraga Correctional Facility. Plaintiff was served with disciplinary charges on March 13, 2015, and Plaintiff was found guilty on March 24, 2015. Plaintiff was sentenced to ten days of detention and thirty days loss of privileges, in addition to $304.43. Plaintiff filed a grievance regarding his misconduct conviction, which was denied at every level. Plaintiff's three subsequent grievances were all rejected as duplicative by Defendant Yon.

Plaintiff was transferred to the St. Louis Correctional Facility (SRF) and on March 25, 2015, Plaintiff submitted a health care request complaining of extreme pain in his broken left wrist and forearm. Plaintiff received a response stating that Motrin had been prescribed and that Plaintiff would be called out. On March 30, 2015, Plaintiff

2

>was issued a splint for his wrist, along with two ace wraps. On June 14, 2015, Plaintiff requested pain medication and was told to watch for a callout. Plaintiff again requested pain medication on June 25, 2015, and also in July and August of 2015. However, health services continued to prescribe Plaintiff inadequate medication. Plaintiff claims that he needs surgery and physical therapy to avoid a permanent disability.

Opinion, (ECF No. 9, PageID.37-39).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with

the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural

rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all*

5

>relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325.  We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 2017 WL 992510, slip op. at 8-9 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process

---

[1] In *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id.* at 3. In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  slip op. at 16. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130. *Id.* at ¶Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with PD 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Defendants argue that Plaintiff failed to name each Defendant in a grievance and failed to comply with the grievance filing time requirements. Plaintiff filed his Step I grievance OCF 15-05-0230-26A on May 5, 2015, raising the issues presented in this case naming only Defendant Lehto at Step I. The grievance was denied at Step I because Defendant Lehto did not use excessive force to control Plaintiff (ECF No. 32-2, PageID.117). At the time that Plaintiff filed his grievance, he did not know the names of each Defendant and he mistakenly thought Defendant Lehto caused his broken wrist. Plaintiff subsequently learned that Defendant Buda caused his broken wrist and the names of the other officers present. Plaintiff submitted his appeal of this grievance at Step II, which was denied on the merits (ECF No. 32-2, PageID.116). Plaintiff appealed this denial to Step III. Plaintiff's Step III grievance appeal was rejected as untimely (ECF No. 32-2, PageID.115).

In the opinion of the undersigned, Plaintiff's failure to timely appeal grievance OCF 15-05-0230-26A to Step III establishes that Plaintiff failed to properly exhaust this grievance by following the MDOC grievance procedures. The Sixth Circuit's opinion in *Reynolds-Bey v. Harris*, 428 F. App'x 493 (6th Cir. 2011) is instructive. The Court decided:

> Here, the grievance was rejected under the procedural rule on timely filing at the first step, improperly rejected under another procedural rule at the second step, and rejected on the merits at the third step. We determine whether this constitutes proper exhaustion by reference to habeas doctrine. *See id.* at 325. *Reed–Bey* states that in habeas cases, " 'a procedural default does not bar consideration of a federal claim ... unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar,' or it is otherwise clear they did not evaluate the claim on the merits." *Id.* (quoting *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). Here, the Step III response (the equivalent of the last state court in habeas) did not "clearly and expressly" state that Reynolds–Bey's fifth grievance was being rejected on procedural grounds. Rather, it mentioned the procedural bases for the Step I and II decisions and then rested its determination on the substantive ground that "[d]ismissals/not guilty findings in major misconduct hearings are not considered proof of misconduct on the part of the author of the misconduct or on the part of any other staff." (R. 32–4 at 6.) Therefore, we find that Grievance OTF 05–03–00153–28E was exhausted for purposes of the PLRA.

*Id.* at 502.

In this case, the Step III response clearly states that Plaintiff's grievance was rejected due to his failure to comply with the procedural rule that required Plaintiff to submit his Step III appeal within ten days of his receipt of his Step II response. In the opinion of the undersigned, *Reynolds-Bey v. Harris* makes it clear that where a Step III response rejects a grievance for failing to follow MDOC grievance procedure, the grievance cannot be considered properly exhausted under the policy. On June 12, 2015, Plaintiff filed a second Step I grievance, OCF 15-06-0338-28A, asserting that he should not have to pay his medical expenses, because Defendant Lehto broke Plaintiff's wrist (ECF No. 32-3, PageID.119). The Step I response rejected

8

the grievance as duplicative of his prior grievance (ECF No. 32-2, PageID.120). Plaintiff filed a third Step I grievance dated October 22, 2015, received on December 4, 2015, explaining that he mistakenly thought Defendant Lehto broke his wrist, but he now knows that Defendant Buda broke his wrist (ECF No. 35-1, PageID.151). That grievance was rejected as a duplicate of grievance OCF 15-05-0230-26A (ECF No. 35-1, PageID.150). Plaintiff filed a fourth Step I grievance on December 16, 2015, OCF 16-01-0039-28A, adding Defendant Buda as the officer who broke his wrist, and Defendants Yon, Stafford, and Stachowicz as officers present (ECF No. 32-3, PageID.121). That grievance was rejected as duplicate of grievance OCF 15-05-0230-26A (ECF No. 35-1, PageID.152). In the opinion of the undersigned, because Plaintiff failed to properly file grievance OCF 15-05-0230-26A, his subsequent duplicate grievances were also not properly filed and Plaintiff has failed to exhaust his administrative grievance remedies against Defendants.[2] See *Vandiver v. Correctional Medical Services, Inc.,* 326 Fed. Appx. 885, 890 (6th Cir. 2009) (grievance that was rejected as duplicative of a prior grievance rejected as untimely was not properly exhausted).

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (ECF No. 31) be granted dismissing this case without prejudice.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505

---

[2] In addition, it appears that Plaintiff did not appeal any of his rejected grievances to Step III.

9

appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

Dated:   November 7, 2017                          */s/ Timothy P. Greeley*
                                                                        TIMOTHY P. GREELEY
                                                                        UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).